COMPANIA MEXICANA REFINADORA ISLAND, S. A., Respondent, *v.* COMPANIA METROPOLITANA DE OLEODUCTOS, S. A., and Another, Appellants.

First Department, March 30, 1928.

Corporations — foreign corporations — service of process — defendants are Mexican corporations — business transacted in New York was done by Virginia corporation, owner of stock of Mexican corporations — Mexican corporations are not in this State in jurisdictional sense.

The defendants are Mexican corporations doing business in that country but their entire capital stock is owned by a Virginia corporation. The Virginia corporation operated in New York transacting business for the Mexican corporations acting under a so-called agency agreement. But the Virginia corporation kept the accounts of the Mexican corporations separate and since 1924 the Mexican corporations have not purchased any supplies in New York nor have they sold any of their products here. While a subordinate employee of the Virginia corporation held a general power of attorney from the defendants, he never exercised the power so held in the ordinary conduct of the business of the

defendants in this State. Even if the Virginia corporation acted as agent for the defendants it was acting as an independent contractor and not as an employee of the defendant corporations subject to the orders of their officers and directors and, therefore, it is clear that the Mexican corporations were not doing business in this State in a jurisdictional sense and were not subject to the service of process here.

FINCH and MERRELL, JJ., dissent, with opinion.

SEPARATE appeals by the defendants from two orders of the Supreme Court, entered in the office of the clerk of the county of New York on the 12th day of December, 1927.

*William M. Chadbourne* of counsel [*Charles A. Boston, Frederic G. Bastian* and *Clinton deWitt Van Siclen* with him on the brief; *Chadbourne, Hunt, Jaeckel & Brown*, attorneys, appearing specially for Compania Metropolitana de Oleoductos, S. A.; *Hornblower, Miller & Garrison*, attorneys, appearing specially for Compania Petrolera Capuchinas, S. A.], for the appellants.

*Leavitt J. Hunt* of counsel [*Leo C. Fennelly* with him on the brief; *Hunt, Hill & Betts*, attorneys], for the respondent.

PROSKAUER, J. Defendants, hereafter called Oleoductos and Capuchinas, are Mexican corporations. Their entire capital stock is owned by a Virginia corporation, the Island Oil and Transport Company. That corporation also owned all the stock of a Delaware corporation known as the Island Oil Marketing Corporation. The stock of the defendants is pledged to the New York Trust Company, as trustee, under a deed securing an issue of some $5,000,000 of bonds. On the 20th day of March, 1922, by order of the United States District Court for the Southern District of New York, receivers in equity were appointed for the transport company and the marketing corporation. Prior to the appointment of the receivers, a fixed method of transacting business in New York had been established. Oleoductos was a pipe line company and rarely sold any oil or any other product in the State of New York. In all other respects its affairs were handled in the same way as those of Capuchinas, which was an oil producing corporation situated in Mexico. All the oil produced by Capuchinas was sold by the marketing corporation from its New York office. The American corporations acted under so-called agency agreements, which gave to them the right to sell the Mexican oil and account therefor to the Mexican corporations, the latter reserving the right to fix terms and prices. Separate accounts were kept carefully identifying the property of the Mexican corporations. Up to 1924 supplies for the Mexican corporations were bought in New York, sent to Mexico and charged to the account of the Mexican corporations. Thereafter they were bought

locally in Mexico. The Mexican corporations paid their local obligations by drawing drafts on the American corporations. At all times a debit and credit account was kept between the parent corporation and these two Mexican subsidiaries. Grace, a subordinate employee of the Island Company, held a general power of attorney from the defendants; he did not act under it, however, excepting in unimportant, rare and isolated instances, and then only as a clerk of the Island Company effectuating the orders of a superior. It was not used in any way to facilitate the ordinary conduct of the business. The president of the Island Company really directed the operations of the Mexican subsidiaries, being in daily contact with them by letter and telegram and giving instructions which were at all times obeyed. After the appointment of the receivers an order was issued by the Federal court directing them to continue the business of all the corporations, but imposing the condition that separate accounts should be kept so as to identify the assets of these Mexican corporations. They continued the practices theretofore established. It affirmatively appears that there are conflicting claims as to the assets of the defendants, the bondholders claiming that these assets should go to the New York Trust Company for their benefit, the general creditors of the Island Company claiming that they should go to the general fund, and specific claimants like the plaintiff asserting contractual rights directly against these defendants. The Mexican corporate organizations have at all times been preserved, and it is conceded that neither of the Mexican corporations has or ever had any bank account, officer, director or employee within the State of New York.

Plaintiff claims that, inasmuch as these Mexican corporations were really administered under the orders of the Island Company and its president in New York, the court should find them present in New York and subject to service of process. The defendants urge that the presence in New York was not that of the defendants, but of their majority or sole stockholder, that the instructions given from New York were given, not by an officer or director of the Mexican corporations, but by some one exercising authority paramount to these corporations, and that, therefore, these Mexican corporations were not in fact present in New York. They further urge that the parties had a right to create and maintain a scheme of organization that would differentiate between the American and the Mexican corporations, and that the activities in New York, even if agency could be spelled out, were those of agents acting as independent contractors and not of agents acting as employees of the defendant corporations subject to the orders of

the officers and directors. They ask the court to find that, inasmuch as there were no servants of these corporations ever in this State, the corporations themselves had no presence here.

It is futile to attempt to reconcile the earlier and the later authorities upon this subject. The latest authorities clearly sustain the defendant's theory. ( *Ultramar Co., Ltd., v. Minerals Separation, Ltd.*, 236 N. Y. 647, revg. 204 App. Div. 795; *Bank of America v. Whitney Central National Bank*, 261 U. S. 171; *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 id. 333, 334; *Bagdon v. P. & R. Coal & Iron Co.*, 217 N. Y. 432; *Selbert v. Lancaster Chocolate & Caramel Co.*, 23 F. [2d] 233.)

The reliance of the respondent upon *Grant v. Cananea Consol. Copper Co.* (189 N. Y. 241) is unfounded. There the defendant was also a Mexican corporation. The plaintiff owned the stock of an Arizona corporation, of which William C. Greene was president, and brought a representative action to have the Mexican corporation adjudged to be the holder in trust of certain property for the benefit of the Cobre Grande Copper Company, the Arizona corporation. Greene was the president of both corporations and as president of the Mexican corporation conducted its affairs from an office in New York. The court held valid service upon Greene as president of the Mexican corporation. But there the defendant's activities in New York were conducted by its own president acting in its behalf. The opinion, moreover, proceeded in entire disregard of the present Federal rule that as a requisite to service upon a foreign corporation there must be found within the jurisdiction not only an officer, but the presence of the corporation itself. For this reason the case has been thus criticised by CARDOZO, J., in *Bagdon v. P. & R. Coal & Iron Co.* (217 N. Y. 432): " Dicta to the contrary in *Grant v. Cananea Consol. Copper Co.* (189 N. Y. 241) must yield to the later decision in *Riverside & Dan River Cotton Mills v. Menefee* (237 U. S. 189, 192)." The later view of the Court of Appeals is more accurately to be derived from *Ultramar Co., Ltd., v. Minerals Separation, Ltd.* (236 N. Y. 647, revg. 204 App. Div. 795). There an English corporation had organized an American subsidiary; the business of the English corporation was principally to issue licenses; the American corporation actually transacted the business in New York; the stock of the American company was owned by voting trustees, who were agents and attorneys in fact for the English corporation and who resided in New York; they in fact granted the licenses and held broad powers of attorney from the English company, but in granting licenses they acted as trustees for the American company. On these facts the Court of Appeals held that the English cor-

poration was not engaged in business in the State of New York. The existence of the powers of attorney was not held to override the formal differentiation between the English and the American corporations. I can find no material distinction between that case and the one at bar.

These decisions follow the theory prescribed by the Supreme Court of the United States. In *Bank of America* v. *Whitney Central National Bank* (261 U. S. 171) it is pointed out by Mr. Justice BRANDEIS that " The jurisdiction taken of foreign corporations, in the absence of statutory requirement or express consent, does not rest upon a fiction of constructive presence, like *qui facit per alium facit per se*. It flows from the fact that the corporation itself does business in the State or district in such a manner and to such an extent that its actual presence there is established."

Here it matters not how much business the defendant corporations did in the State of New York through others; they are not amenable to the service of process here unless their agents and servants functioned here continuously in such a manner as to justify a finding that the corporation was here in fact. That the Island Company and its officers and its receivers did a great many things for these foreign corporations in New York, or even that as owners of its stock they directed the operations of the foreign corporations, are circumstances without significance. The foreign corporations had no control as master or employer over the Island Company or Stevens, its president, or the receivers. It is not enough that business of the corporation is carried on in New York. That business must be carried on by the foreign corporation itself.

In a case involving the converse of the question here presented, the United States Supreme Court has further elucidated the principle. (*Cannon Mfg. Co.* v. *Cudahy Packing Co.*, 267 U. S. 333, 334.) The Cannon Manufacturing Company was a North Carolina corporation; the Cudahy Packing Company was a Maine corporation; the latter formed a subsidiary corporation under the laws of Alabama called the Cudahy Packing Company of Alabama; it employed that subsidiary as the instrumentality through which it marketed its products in North Carolina; it owned the entire stock of the subsidiary and " * * * exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other States." The claim was made that the presence of the subsidiary in North Carolina was the presence of the defendant, and that it could, therefore, be served with process in North Carolina. Mr. Justice

BRANDEIS points out that that defendant " might have conducted such business through an independent agency without subjecting itself to the jurisdiction. * * * It preferred to employ a subsidiary corporation. * * * The corporate separation, though perhaps merely formal, was real. It was not pure fiction."

So in the case at bar. The corporate identity of the defendants was at all times scrupulously maintained. The parties in interest had a right to set up and preserve this corporate differentiation. They did so and there is no principle of law or public policy which deprives them of their right to resist service within this jurisdiction when the corporations never acquired a presence within the State.

The orders should, therefore, be reversed, with ten dollars costs and disbursements, and the motions granted, with ten dollars costs.

DOWLING, P. J., and MCAVOY, J., concur; MERRELL and FINCH, JJ., dissent.

FINCH, J. (dissenting). The defendants appeal from orders denying their motions to vacate service of process upon the grounds that the defendants were foreign corporations not doing business in this State and that the persons upon whom service was made were not proper persons to receive such service. The matter was referred to a referee to hear the parties upon the issues of fact involved and the referee reported that the defendants were in fact doing business within the State and that the process was duly served upon persons who were managing agents of the corporations and hence the service was valid. These findings are supported by the facts appearing in the record. These facts show that the defendant corporations were actively engaged in the transaction of their business in this State through a corporation which will be referred to hereafter as the marketing corporation. The marketing corporation was appointed the general purchasing and sales agent of the defendants, sold for them their product, and purchased for them their supplies, paying for the latter out of the proceeds of the sales of the defendants' product. The expenses of the defendants for labor, etc., in connection with production operations were paid by drawing upon the marketing corporation in New York. The latter made monthly reports to the defendants of its receipts and expenditures. The defendants in turn rendered to the marketing corporation accounts as to the debits and credits to which they were entitled. From the accounts so rendered the marketing corporation would ascertain and charge against each of the defendants its proportionate share of the New York office expenses, salaries, etc., of the marketing corporation. After the receivership of the marketing corporation, the receivers continued

conducting the business of the defendants in the same manner as above stated, and have at all times dictated the policy of such business, deciding questions relating to the drilling of new wells, the payment of taxes, the prosecution and settlement of claims of the defendants against the Mexican government, etc   Under these facts and circumstances the defendant corporations clearly were doing business within the State.

So, also, under the facts above set forth, it cannot seriously be questioned that service upon the marketing corporation through its president and its receiver satisfies the statutory requirement of making service upon a managing agent of the defendants. (See Civ. Prac. Act, § 229.)   There is no statutory definition of what shall constitute a managing agent.   The authorities, however, are in accord that the requirement of the statute is fulfilled where service is made upon one whose position in relation to his agency for the defendant is such as fairly to create a presumption that notice to him will be notice to the principal.   In addition to service upon the receiver of the marketing corporation and upon its president, service also was made upon one who concededly is the attorney in fact of the defendants, and who, as such, has executed in New York on behalf of the defendants contracts involving millions of barrels of oil, and who was expressly authorized on behalf of the defendants among other things to "initiate and prosecute before the local and Federal tribunals the respective suits, civil or criminal, with that authority which, conforming to the law, is inherent to the quality of a general representative, and without the necessity of any special mention of express authority to take part in the suit, to institute actions.   *   *   *."

It is true that the earlier and later authorities upon what constitutes doing business within a State (compare *Ultramar Co., Ltd.,* v. *Minerals Separation, Ltd.,* 236 N. Y. 647, with *Grant* v. *Cananea Consol. Copper Co.,* 189 id. 241) cannot be reconciled and that the later authorities have been much more tender to the concerns which seek to obtain the advantages flow ng from doing business in the foreign State, than to those residents of the State who find it necessary to resort to the courts to protect their rights. No decisions, however, have gone to the length of holding that a concern which does a continuous business in the foreign State through agents is not within the foreign State.   If this were not so, the economic and social aspects of driving all suitors to the courts of the home State, in the case at bar, Mexico, would soon cause a reconsideration.   A corporation must always act through agents.   Of course, where an agency does not exist, but the control is merely through a stock ownership in an otherwise independent

corporation, a different situation arises. (*Cannon Mfg. Co.* v. *Cudahy Packing Co.*, 267 U. S. 333.)   In the case at bar, however, there are sufficient facts and reasonable inferences from these facts to establish an agency by the defendant corporations for doing business in this State.

It follows that the orders appealed from should be affirmed.

MERRELL, J., concurs.

In each case:  Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.