ABRAHAM STREIFER et al., Plaintiffs, *v.* CABOL ENTERPRISES LIMITED et al., Defendants.

Supreme Court, Special Term, Ulster County, September 8, 1962.

*John L. Larkin* for Cabol Enterprises Limited, defendant. *David M. Barnovitz* for plaintiffs.

HERBERT D. HAMM, J. Cabol Enterprises Limited, hereinafter called Cabol, has moved to set aside the service of a summons. The summons was served on its president within the State of New York. Cabol is a foreign corporation not qualified to do business in the State of New York.

The action arises out of an agreement by Cabol to purchase from the more than 30 individual stockholders of Kingston Cable-

vision, Inc., of whom the plaintiffs are two, all their stock in Kingston Cablevision, Inc. Kingston Cablevision, Inc., is a New York corporation. When mentioned hereafter it will be referred to as Kingston Cablevision.

A hearing has been held.

Cabol has retained attorneys in New York City and maintains a transfer agent in New York and a listing on the American Stock Exchange. While these activities alone are insufficient transaction of business within the State to render the defendant subject to jurisdiction, they may be considered within the general complex of all the defendant's domestic actions. Also within the past two years the board of directors of Cabol has held approximately 10 meetings, about four of which were held in New York State. It must be assumed that when the defendant's board of directors was meeting in the State of New York, the directors were exercising supervision over its management and business and providing for the successful transaction of this business (*Elish* v. *St. Louis Southwestern Ry. Co.,* 305 N. Y. 267, 270). The contract sued on was negotiated and prepared in New York State. One of the plaintiffs and Cabol's attorneys conferred in New York City on the contents of the contract. The contract required the signatures of all of Kingston Cablevision's stockholders. Many of the stockholders signed the instrument in New York State and of those who did sign within the State G. Everett Gaillard and Walter L. Hotz, both officers and directors of Cabol, procured many of the signatures. To meet a time limitation contained in a franchise granted Kingston Cablevision by the City of Kingston, New York, Cabol advanced substantial sums of money to Kingston Cablevision. Cabol employed accountants in this State to audit Kingston Cablevision's books. After the contract was signed at least one of Cabol's employees visited the Kingston, New York, area to inspect Kingston Cablevision's office and facilities. The same employee visited this State on about six occasions in the past two years on Cabol's business. Before Cabol formally rejected the contract Hotz attempted to induce Kingston Cablevision's stockholders to consent to a modification and this attempt was made in New York State.

Cabol organized a Connecticut corporation known as General Radionics Corporation. General Radionics Corporation will be referred to hereafter as General Radionics. General Radionics assumed the active management and control of Kingston Cablevision and Walter L. Hotz, vice-president and director of Cabol and president and director of General Radionics, was also the president and a member of the board of directors of Kingston

Cablevision. General Radionics has had no income since its incorporation and all its operating expenses, including the salaries of its officers and employees, have been met by loans from Cabol. According to the testimony General Radionics' operations were controlled by persons trusted by Cabol's management. From a time approximately in July of 1961 until this action was commenced General Radionics managed all the affairs of Kingston Cablevision through Hotz and Robert J. McGeehan, an electronics engineer employed exclusively by General Radionics. McGeehan personally supervised in the Kingston, New York, area the construction of Kingston Cablevision's facilities and improvements under the municipal franchise. General Radionics disposed of Kingston Cablevision's equipment, employed and dismissed the latter's employees and took over all its banking functions.

The 1961 annual report of Cabol contained the following:

" ELECTRONICS DIVISION

" General Radionics Corporation — Alabama Cablevision Co.

\* \* \*

" The Electronics Division is under the supervision of our Vice President and Director Walter L. Hotz."

The courts have noted the difference between the constitutional dictates of due process and the extent and nature of a foreign corporation's business activities in this State sufficient to warrant assumption of jurisdiction. It seems that the corporation's transactions, although adequate to satisfy the due process requirement of the Federal Constitution, may be insufficient to subject it to the jurisdiction of the courts of this State.

As to due process it is clear that the activities of the defendant Cabol were sufficient to satisfy the substantial contacts doctrine as laid down in the United States Supreme Court cases such as *International Shoe Co.* v. *Washington* (326 U. S. 310) which extended the constitutional reach of State power. In *International Business Mach. Corp.* v. *Barrett Division Allied Chem. & Dye Corp.* (16 A D 2d 487, 489) it was stated: " Appellant's activities were clearly sufficient to satisfy the demands of due process, which, under the more recent and more liberal rule, are ' met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.' (*International Shoe Co.* v. *Washington,* 326 U. S. 310, 317, *supra; Matter of La Belle Creole Int., S. A.* v. *Attorney-General of State of N. Y.,* 10 N Y 2d 192, 197; *Elish* v. *St. Louis Southwestern Ry. Co.,* 305 N. Y. 267, 269;

*Rochester Happy House* v. *Happy House Shops,* 14 A D 2d 491.) Here, within the principle of the *International Shoe* case, there were ' some additional activities ', and, indeed, substantial ones, beyond those of solicitation (p. 314), which were not only ' continuous and systematic, but also [gave] rise to the liabilities sued on ' (p. 317). It has been said that, ' It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the] State [concerned].' (*McGee* v. *International Life Ins. Co.,* 355 U. S. 220, 223.) "

As previously mentioned, a distinction has been made between the requirements of due process and the criteria of doing business within the State. In *Ames* v. *Senco Prods.* (1 A D 2d 658, motion for leave to appeal granted 1 A D 2d 774) the court said: " While it is true that the limitation on service of process on foreign corporations has been lifted to a considerable extent by the United States Supreme Court in *International Shoe Co.* v. *Washington* (326 U. S. 310), the settled rule as to the extent or exercise of our jurisdiction in this State has not been changed." In *Fremay* v. *Modern Plastic Corp.* (15 A D 2d 235, 240) the court concluded: " the applicable test as to whether defendant corporation does business within the State of New York is the classic ' presence ' test, as found in the leading cases (e.g., *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259)."

In *Berner* v. *United Airlines* (3 A D 2d 9, 13, affd. 3 N Y 2d 1003) Presiding Justice BERGAN writing for the First Department as Associate Justice observed:

" There is, as Judge CARDOZO noted in *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259, 268) ' no precise test of the nature or extent of the business that must be done.' He added that all ' that is requisite ' is that ' enough be done ' so that the New York court will be able to say that the defendant ' is here '. The repeated citation of this decision confirms the elasticity of the basic concept.     *     *     *

" Finally, it must be manifest that the concept of ' doing business ', even that resting on mere solicitation by salesmen, has been broadened by *International Shoe Co.* v. *Washington* (326 U. S. 310) which upheld sales activity as a ground of substituted service of process."

Having in mind that New York has not changed the rule that an isolated contract is insufficient to give jurisdiction over a foreign corporation (*Simonson* v. *International Bank,* 16 A D 2d 55, 57), I think the plaintiff has satisfied the test laid down in *Tauza* v. *Susquehanna Coal Co.* (*supra*) and in the many subsequent cases in which *Tauza* was cited and applied. Moreover, the relationship between the defendant Cabol and its subsidiary

General Radionics was not the usual one. Of course a corporation may not be subjected to the jurisdiction of our courts merely on the basis of the activities of its subsidiaries (*Cannon Mfg. Co.* v. *Cudahy Co.*, 267 U. S. 333; *Echeverry* v. *Kellogg Switchboard & Supply Co.*, 175 F. 2d 900 [C. C. A. 2d, 1949]; *Compania Mexicana* v. *Compania Metropolitana*, 223 App. Div. 346, affd. 250 N. Y. 203). But the plaintiff has indicated more than a relation of parent and subsidiary corporation. It is significant that General Radionics generated no income of its own but owed its active existence solely to funds received from Cabol and without which it could not have performed any function whatever. I find that General Radionics was merely an instrumentality or agent of Cabol through which Cabol engaged in business in the State of New York (cf. *Goodman* v. *Pan American World Airways,* 1 Misc 2d 959, affd. 2 A D 2d 707, motion for leave to appeal denied 2 A D 2d 781; *Rabinowitz* v. *Kaiser-Frazer Corp.,* 198 Misc. 707, affd. 278 App. Div. 584, affd. 302 N. Y. 892). The motion is denied.