Taca International Airlines, S. A., a Corporation of El Salvador, Appellant, *v.* Rolls-Royce of England, Ltd., et al., Respondents.

First Department, April 9, 1964.

*William M. Keegan* of counsel (*P. G. Pennoyer, Jr.*, with him on the brief; *Bigham, Englar, Jones & Houston*, attorneys), for appellant.

*Robert Layton* of counsel (*Thomas F. Cusack* with him on the brief; *Gilbert, Segall & Young*, attorneys), for Rolls-Royce of England, Ltd., respondent.

*Per Curiam.* This action seeks recovery for the loss of plaintiff's aircraft as the result of a crash at Managua, Nicaragua. Plaintiff has sued several defendants, among them Rolls-Royce, Ltd., an English corporation. This defendant has moved to set aside the service on it. Service was purportedly made by service on Rolls-Royce, Inc., and Bruce Thomson. There is no question

but that these persons were served, the issue being whether such service reached the moving defendant.

Rolls-Royce, Ltd., manufactures and sells motor cars and airplane engines. It also sells parts and gives service to its customers. These products are sold practically world-wide and customers can get service at many places. Rolls-Royce, Ltd., owns all the stock of Rolls-Royce of Canada, Ltd., a Canadian corporation, and this company owns all the stock of Rolls-Royce, Inc. The business of Rolls-Royce, Inc., is solely in the sale of products manufactured by Rolls-Royce, Ltd., and the servicing of the purchasers of these products. The three mentioned companies have some directors in common, and key executive personnel in Rolls-Royce, Inc., were former executives of either the English or Canadian company and were assigned to their positions by the parent English company. There are frequent conferences among executives of the three companies at which the policies of Rolls-Royce, Inc., are determined. Rolls-Royce, Inc., employees who require technical training are given it by Rolls-Royce, Ltd., in England. All sales literature used by Rolls-Royce, Inc., is written and published by Rolls-Royce, Ltd.

Rolls-Royce, Inc., gets its income in several ways. It owns no automobiles, and when a sale is made to a customer it buys a car from Rolls-Royce, Ltd., in England and imports it. The sale is at a fixed price which is lower than the price to the ultimate purchaser. Rolls-Royce, Ltd., gives a warranty directly to the purchaser which Rolls-Royce, Inc., delivers with the car. Rolls-Royce, Ltd., pays Rolls-Royce, Inc., a fixed annual fee for services rendered to customers in connection with these warranties. As to airplane engines, the compensation for service is paid by Rolls-Royce of Canada and this payment is measured by the price of the spare parts sold by Rolls-Royce, Inc.

All of the net income of Rolls-Royce, Inc., goes to Rolls-Royce of Canada and appears in that company's balance sheet. As affected by the other operations of the Canadian company it then appears in the balance sheet of Rolls-Royce, Ltd.

The question is whether these facts constitute doing business in this State. Each case necessarily depends on its own facts (*Chaplin* v. *Selznick*, 293 N. Y. 529, 533). The fact that a corporation has a subsidiary does not in and of itself bring it within the State or make it amenable to process (*Compania Mexicana* v. *Compania Metropolitana*, 250 N. Y. 203). It is otherwise where the subsidiary, though nominally independent, actually functions as a department of the parent (*Rabinowitz* v.

*Kaiser-Frazer Corp.*, 198 Misc. 707, affd. 278 App. Div. 584, affd. 302 N. Y. 892). And this is not affected by the fact that the subsidiary is given the appearance of being an independent contractor (*Goodman* v. *Pan American World Airways*, 1 Misc 2d 959 [EAGER, J.], affd. 2 A D 2d 707). The facts here are virtually conclusive that any claim of independence on the part of Rolls-Royce, Inc., is illusory. It is clearly a sales agent, despite the forms that would make it appear on the surface to be a purchaser.

We are not unmindful of the decision in *Steingold* v. *Capital Airlines* (34 Misc 2d 33, affd. 19 A D 2d 778) where, on similar service, the action was dismissed by this same moving defendant. The decision there was on an entirely different ground, namely, the advisability of entertaining an action by a nonresident against a foreign corporation for an accident occurring outside this State. The court concluded the equities in that case did not warrant exercise of the discretionary power to entertain the action. The question litigated here is entirely different.

The order should be reversed and the motion denied, with costs to the appellant.

VALENTE, J. P. (dissenting). I am in agreement with the majority as to the unquestioned principle of law that a foreign corporation does not become amenable to suit in the State merely because a wholly owned subsidiary is doing business here. (*Simonson* v. *International Bank,* 16 A D 2d 55, 58.) It is only where the subsidary is shown to be an instrumentality used as a subterfuge for the parent corporation to conduct its regular business, that the corporate entities will be pierced and the subsidiary considered an agent of the parent company upon whom service can be made to assert personal jurisdiction over the parent. Moreover, I also agree that the determination as to whether the subsidiary is solely an instrumentality of the parent corporation is a factual question and each case must be decided on its peculiar facts. In the instant case there was a comprehensive hearing before a Special Referee whose findings that Rolls-Royce, Ltd., was not doing business in this State and was not present here were confirmed by Special Term after a painstaking review. I cannot accept the view of the majority which would not only overturn those findings but would, in addition, interpret the facts established before the Referee as demonstrating that any claim of independence between the companies is illusory. Contrary to the majority, I would hold that the proof adequately established that Rolls-Royce, Ltd.,

with careful deliberation, maintained the complete separateness and independence of its — once removed — subsidiary in New York, and that it was established that there was no such complete domination as to make the subsidiary an agent or tool of the grandparent company. I, therefore, dissent and would affirm the order vacating the service.

McNally, Stevens and Steuer, JJ., concur in *Per Curiam* opinion; Valente, J. P., dissents and votes to affirm, in opinion.

Order, entered on September 30, 1963, reversed, with $20 costs and disbursements to the appellant, and the motion denied, with $10 costs.