341 F.2d 666
 Helen BORYK, as Administratrix of the Estate of William
Boryk, Jr., Deceased, Helen Boryk, individually, and as
surviving widow of William Boryk, Jr., Helen Boryk, as
Natural Guardian of Stephanie Boryk, an infant, Plaintiff-Appellant,
v.
The deHAVILLAND AIRCRAFT CO., Ltd., Defendant-Respondent,
and Aerolineas Argentinas and deHavilland
Aircraft, Inc., Defendants.
 No. 301, Docket 29066.
 United States Court of Appeals Second Circuit.
 Argued Jan. 20, 1965.
Decided Feb. 16, 1965.
 
 Edward M. O'Brien, New York City (Speiser, Shumate, Geoghan & Law, New York City, on the brief), for plaintiff-appellant.
 John F. Byrne, New York City (Mendes & Mount, New York City, on the brief, Benjamin E. Haller, New York City, of counsel), for defendants-appellees.
 Before MOORE, FRIENDLY and MARSHALL, Circuit Judges.
 MOORE, Circuit Judge.
 
 
 1
 Plaintiff's decedent was killed in an airplane crash in 1961. In 1962 she brought this wrongful death action against the airline (Aerolineas Argentinas), the manufacturer of the plane, deHavilland Aircraft Co., Ltd. (a British corporation referred to as 'Ltd.'), and its subsidiary, deHavilland Aircraft, Inc. (a Delaware corporation authorized to do business in New York and referred to as 'Inc.'). Service on Ltd. was made in New York on Ian Fossett, President of Inc. Ltd, appeared specially, moving to set aside service and to dismiss the complaint as to it. Judge Bryan granted the motion, 228 F.Supp. 528 (S.D.N.Y.1964), and plaintiff moved for reargument based on a subsequent decision by the Appellate Division of the New York Supreme Court, TACA Int'l Airlines, S.A. v. Rolls-Royce of Eng., Ltd., 21 A.D.2d 73, 248 N.Y.S.2d 273 (1st Dep't 1964). Finding that case not controlling, Judge Bryan denied reargument and entered final judgment pursuant to Fed.R.Civ.P. 54(b) dismissing the complaint against Ltd. Plaintiffs appeals.
 
 
 2
 The question is whether under New York law Ltd. was 'doing business' in New York to such an extent as to make it amenable to New York's jurisdiction, and, if it was so amenable, whether service was made on a proper 'managing agent.' The facts are not significantly in dispute and have been fully developed. Compare Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317 (2d Cir. 1964). To Judge Bryan's thorough findings, 228 F.Supp. at 530-533, only a brief summary need be added.
 
 
 3
 With Fossett as its representative, Ltd. began selling airplanes in this country in 1952 and providing service and parts for them. Inc., wholly owned by Ltd. and having several of the same directors, was created in 1954. Pursuant to a 1956 service agreement under which Ltd. paid Inc. $70,000 (later $85,000) per year, Inc. substantially took over the activities Ltd. had been carrying on; Inc. had already been carrying on some of the operations. However, Inc. did not and apparently could not perform many of the services specified; rather, they were performed by Ltd. employees. The service agreement was formally terminated in 1961, although Ltd. still provided employees for certain servicing. While Inc. had a few years earlier taken over performance of a lease on space at the La Guardia Airport the lease was not actually transferred to Inc. until 1956. Ltd. made no-interest loans to Inc. on terms that would be unusual between independent entities, and Inc. paid substantial portions of its income out in 'dividends' to Ltd. Substantially all of Inc.'s income derives from the sale and servicing of products manufactured by Ltd. or other Ltd. subsidiaries; Inc. also sold spares for aircraft manufactured by some other British companies which, with Ltd., are members of the Hawker-Siddeley Group. A relatively insignificant amount from sales of aircraft polish accounts for Inc.'s only business not related to Ltd. Inc. places orders with Ltd. after receiving them from customers, and pays Ltd. only after receiving payment from the ultimate purchaser, to whom delivery is made by Ltd. Inc. is required by Ltd. to give warranties at least equivalent to those given by Ltd. Inc. has paid a variety of bills for Ltd. employees and officers when they have been in his country. Ltd. has an arrangement with a New York bank with respect to the payment of import duties. Inc.'s name is listed on Ltd.'s letterhead and Ltd. is listed in the World Aviation Directory as having an office in New York at Inc.'s address, Inc. being listed as Ltd.'s distributor. Separate books are maintained.
 
 
 4
 In determining what the New York Court of Appeals would do with the facts of this case, see Arrowsmith v. United Press Int'l, 320 F.2d 219 (2d Cir. 1963), we have a recent decision of that court not available to the trial court, namely, the affirmance of the Appellate Division's decision in TACA, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965). That decision indicates New York's steady movement towards holding, that in determining whether a corporation has engaged in activities in the state, it is immaterial whether these are conducted through a branch or through a subsidiary corporation, even though the latter's formal independence has been scrupulously preserved. Of course, mere ownership by a foreign corporation of the stock of a subsidiary doing business in New York still does not subject the foreign corporation to the jurisdiction of New York, See Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925).
 
 
 5
 Chief Judge Desmond in TACA considered that case 'controlled' by Rabinowitz v. Kaiser-Frazer Corp., 198 Misc. 707, 96 N.Y.S.2d 642 (Sup.Ct.1950), aff'd, 278 App.Div. 584, 102 N.Y.S.2d 815 (2d Dep't), aff'd, 302 N.Y. 892, 100 N.E.2d 177 (1951), a case no less similar to this case than it is to TACA. If there are differences they are merely reflections of the fact that more automobiles than airplanes are sold and that the sale of airplanes is rather episodic compared to the continuous flow of automobiles from England. Rolls-Royce showrooms are more commonly seen, one suspects, than showrooms of any, if not all, jet plane manufacturers-- domestic and foreign.
 
 
 6
 While recognizing that in the area of jurisdiction the facts of each case determine the answer, we find the situation here more like that in State of Maryland for Use of Mitchell v. Capital Airlines, Inc., 199 F.Supp. 335 (S.D.N.Y.1961), involving Vickers, than that in two earlier cases involving Ltd. itself, State St. Trust Co. v. British Overseas Airways Corp., 144 F.Supp. 241 (S.D.N.Y.1956), and Anderson v. British Overseas Airways Corp., 144 F.Supp. 543 (S.D.N.Y.1956). In those cases the events of the subsequent six years could not possibly have been known even on the fullest record, and the records in those cases were not nearly so revealing as the record in this case.
 
 
 7
 Ltd. being amenable to New York's jurisdiction, there is a further question whether service was made on a proper 'managing agent.' That Fossett or Inc. was not explicitly labelled 'managing agent' by Ltd. nor 'expressly authorized (by it) to accept service of process,' Cook v. Bostitch, Inc.,328 F.2d 1, 3 (2d Cir. 1964), is not decisive. Here, as throughout the area of jurisdiction, the realities and not just the formalities must be dealt with. Thus, Judge Learned Hand stated that 'whatever activities make the corporation 'present,' the agent in charge of those activities is the 'managing agent' pro hac vice.' Bomze v. Nardis Sportswear, Inc., 165 F.2d 33, 37 (2d Cir. 1948). See Lehn & Fink Prods. Co. v. Milner Prods. Co.,117 F.Supp. 320, 322 (S.D.N.Y.1953); State of Maryland for Use of Mitchell v. Capital Airlines, Inc., supra, 199 F.Supp. at 377; Rabinowitz v. Kaiser-Frazer Corp., supra, 198 Misc. at 713, 96 N.Y.S.2d at 646-647. Ltd's timely answer indicates that it was not prejudiced by the actual method of service. Specification of the proper recipients of process is made to ensure that there will be actual notice to the responsible officers. That purpose has been served.
 
 
 8
 Reversed.