Eager, J.
This action is brought to recover for an alleged wrongful death by reason of an airplane crash in Brazil in April, 1952. United Aircraft Corporation (hereinafter referred to as “United”) named as a defendant in the action and appearing specially, moved to set aside and vacate the service of the summons and complaint allegedly made upon it by the delivery of the same in this State to one Meloy. It appears that said Meloy was not an officer or employee of United, but that, at the time of the service, he was a managing agent of United Aircraft Export Corporation (hereinafter referred to as “ Export ”) which corporation is a wholly owned subsidiary of United. It is plaintiff’s claim that Export was a managing agent of United doing business in this State and that the service upon it was good as service upon a managing agent of United pursuant to subdivision 3 of section 229 of the Civil Practice Act.
The matter was set down for a hearing and the parties were given opportunity to present proofs upon all relevant issues. It appears that United and Export are both Delaware corporations and have their principal offices in East Hartford, Connecticut. United has not, however, filed a certificate for doing business in the State nor has it duly designated a person to be served in its behalf in this State,
*961 It was conceded by United at the hearing that, at the time of the alleged service, Meloy was a managing agent of Export, and for the purposes of determination of the motion, United further stated that, if it was properly established that Export was a managing agent of United, that United would concede that it was doing business in New York State. Thus, the sole question presented for determination is whether or not Export was a managing agent of United at the time of the service.
There is some offhand reference in United’s brief to the alleged failure of plaintiff to show due diligence to effect service on an officer of United in the State, as a condition precedent to the right of plaintiff to serve a managing agent. (See said Civ. Prac. Act, § 229, subd. 3.) However, counsel for United, at the hearing, expressly took the position that its claim of defective service rested solely upon the premise that Export was not the managing agent of United, and the question of plaintiff’s efforts, if any, to effect service in this State upon an officer of United was not litigated. Under the circumstances, United should not be permitted now, after the close of the hearing, to urge plaintiff’s failure to attempt service on an officer of the company. In any event, it appears that United’s principal place of business is in Connecticut and that officers of United are not generally to be found within the State; and it is reasonable to infer that any attempt by plaintiff to serve an officer within the State would have been futile. It is held that “ ‘ due diligence ’ means a search for the possible ” and that, where it is undisputed that no amount of diligent searching would have located a proper officer within the State, the statute does not require the “ empty procedural ceremony ” of searching. (Benware v. Acme Chem. Co., 284 App. Div. 760, 763.)
Now, as matters of fact, the following appear: Export was incorporated as a subsidiary of United, and all of the stock of Export is owned by United. The main offices of the two corporations are located in East Hartford, Connecticut, and Export leases from United and occupies part of a building, the rest of which is occupied by United and one of its operating divisions. The lease between Export and United is renewable from year to year and subject to termination by either party on 30 days’ notice prior to expiration of any year. The majority of the directors of Export are officers or employees of United. In fact, the president, the secretary, the comptroller and the treasurer of United are all directors of Export. Thus, Export is under the control of United.
*962 United, through its several divisions, manufactures for sale and sells airplane engines, equipment, parts and tools, airplane propellers and helicopters, and Export was incorporated and exists for the purpose of handling all foreign sales of United (excepting sales in Canada). Mr. Chatfield, secretary of United, testified that sales are not made “ directly ” by United to foreign customers but are made to such customers ‘ ‘ through Export Corporation to — Export Corporation for resale ”; that there is no other medium through which United makes foreign sales. In any event, it is undisputed that all foreign sales of United products (except to Canada) are handled through Export; and that this constitutes 98% of Export’s business.
There is a written agreement between United and Export, dated June 23,1947, and it provides that “ United hereby retains the Export Corporation to act as sole distributor for the sales outside the United States of America, the Territories of Hawaii and Alaska and the Dominion of Canada of aircraft, aircraft engines and propellers and related parts, including tools and maintenance equipment, manufactured by or for United ”. As stated in a letter of United accompanying the agreement, * ‘ It is the intent of United that the Export Corporation shall handle all matters pertaining to the sale of United’s products outside the United States of America, the Territories of Hawaii and Alaska and the Dominion of Canada. United agrees to execute any further papers or documents, transfers or assignments and to do any further act or acts required to carry out such intent.”
To carry out the arrangement between the two corporations, provision is made in the agreement for the sale by United to Export of such United products as Export may require to comply with orders received by its customers within the territory allotted to it, in accordance with United’s standard conditions of sale; ‘ ‘ and at such prices and upon such other terms and conditions as may be mutually agreed upon from time to time.” By letter of August 11, 1947, United wrote to Export that it is practically impossible for us to forecast accurately our costs of handling your business, and proposed that sales by United to Export be made at certain discounts with provision that “ such discounts to be reviewed at the year end ”, and this was accepted by Export. From time to time thereafter, on letter from United to Export and accepted by Export, the rates of discount were changed.
The agreement of June 23, 1947, further provided that, upon advice to the Export Corporation that any products are ready for delivery, United shall charge the Export Corporation on its books for the purchase price thereof, and shall bill the Export *963 Corporation accordingly. United further agreed that ‘ ‘ in return for advice and assistance from the Export Corporation with respect to the negotiation and administration of license agreements with various licensees domiciled within the territory described in paragraph 1 hereof, it will pay to the Export Corporation such amounts as may be mutually agreed upon from time to time.” In this connection, by the letter of August 11, 1947, United proposed that ‘ ‘ with respect to licenses and technical assistance agreements currently in force United pay to Export Corporation 10% of all royalties which United may receive from July 1, 1947, forward. It is further proposed that with respect to licenses and technical assistance agreements negotiated in the future United pay to Export Corporation such amounts as may be considered equitable by United and the Export Corporation based on the circumstances involved in the negotiation and servicing of each such agreement ”, and this proposal was accepted by Export.
The manner of handling of the sales of United products by Export supports plaintiff’s contention that Export is in fact an instrumentality created by United to further the purposes and business of the latter. Export, in fact, carries no stock or inventory and when it makes a sale or receives an order, it sends a purchase or requisition order for the goods to one of the divisions of United (either Hamilton-Standard, Pratt & Whitney, or Sikorsky) and the latter fills the order — packs it and ships it — then United advises Export that the goods are shipped — Export bills the customer — Export pays United once a week on all goods shipped the previous week. The amount paid by Export to United is the regular price for the goods less discounts which are in fact fixed by United and accepted by Export. According to Mr. Etherington, the secretary of Export, “ We (Export) make our expenses — our money is in the spread of the discount we get off United’s list prices. We get a certain discount and we sell to the certain other discounts which gives us a spread.”
Clearly New York City is one of the principal air centers of the world, that is, from point of view of commercial air traffic. Most of the important air carriers operate into New York. Foreign airline executives and personnel are constantly coming into and going out of New York. They come here to observe and to obtain information in connection with airplanes, and their engines and equipment, and to examine and purchase the same. United’s contact with these people in this State is through Export. It is Export’s business to make contact with foreign executives and with all users of and prospective foreign *964 customers for United products who come into New York City, to entertain them, to promote good will for United and its products, to sell its products to all foreign customers and Governments (Canada and Canadian customers excepted) and, when necessary or desirable in the interests of United, to arrange for appointments for them with United personnel, or at the plants of the several divisions of United. Incidentally, all contracts for the sale of United products by Export contain United’s form of warranty. United seems to contend that it is not bound thereby directly to a vendee from Export. However, it appears that, when a foreign customer complains to' Export with respect to the quality or fitness of a United product, Export will examine into the complaint and if it is found that it may have substance, Export, having no service department of its own, takes the complaint up with the proper manufacturing and operating division of United.
It is true that as a matter of form, United, always in full control, has arranged and continues a setup whereby it (Export) does appear on the face of it to be acting as an independent dealer, but form here is merely a veil which the court may cast aside to bring to light the true picture. In reality, it appears that Export is in effect a sales agent for United products in foreign countries with its compensation for sales represented by discounts decided upon by United. The fact is United has no independent export division, and does not itself make any sales to foreign customers and Governments. I am satisfied that United incorporated Export and continues its existence for the purpose of taking care of the foreign business of United (other than Canadian business), and, of course, it exists at the will of United. Its function is to work generally toward the developing of a foreign market for United products, to promote the good will of United and its products in such market, and to serve such market. Thus, it is clear that it performs functions essential to the conduct of the business of United. Finally, it appears that it is subject to complete domination by United, and I am satisfied that in all respects it carries out the policies of and does the bidding of United. It is truly an agent and tool of United.
As a matter of policy, a foreign corporation doing business here through a subsidiary should be readily amenable to the process of our courts, and, as a general proposition, if the subsidiary is the mere instrumentality of the foreign corporation, it should be held to occupy the status of a managing agent of the foreign corporation within the meaning of statutory provisions authorizing service of process upon a managing agent *965 of a corporation. Here, Export is the instrumentality of United and is in constant touch with the latter not only with respect to sales in the territory assigned to it, but also in connection with the promotion of good will and business of United generally with foreign customers. The relationship between the two is such as to irresistibly lead to the inference that "notice to Export of a suit against United would be promptly transmitted to United. Therefore, I hold that Export was the managing agent of United within the meaning of the provisions of said subdivision 3 of section 229 of the Civil Practice Act. (Cf. Benware v. Acme Chem. Co., 284 App. Div. 760, supra; American Development Corp. v. Brown & Sites Co., 135 N. Y. S. 2d 478; Rabinowits v. Kaiser-Frazer Corp., 198 Misc. 707, affd. 278 App. Div. 584, affd. 302 N. Y. 892; Society Milion Athena v. National Bank of Greece, 166 Misc. 190, affd. 254 App. Div. 728; Sterling Novelty Corp. v. Frank & Hirsch Distr. Corp., 299 N. Y. 208, and Tauza v. Susquehanna Coal Co., 220 N. Y. 259.)
The motion to vacate the service of the summons is denied. Submit order on notice.