Charles A. Loreto, J.
Motion by the defendant Societe Anonyme Des Automobiles Peugeot (for convenience herein designated as SAP), appearing specially, to set aside the service of a summons upon the ground that it was not doing business in the State.
*1048 SAP is a foreign corporation organized under the laws of the Republic of France, with its principal office in Paris, France. It is engaged in the manufacture and sale of automobiles and trucks. Its manufacturing operations are carried on entirely at its plants in France.
In January, 1958 it caused the organization in this State of the defendant Peugeot, Inc. (hereinafter referred to as peugeot), all of whose shares of capital stock are owned by SAP. Since that time, all sales made by SAP in the United States have been made to peugeot in France, f.o.b., title to the vehicles and products passing in France. SAP has not solicited or sold any of its products in the State of New York since the incorporation of PEUGEOT.
Defendant SAP does not have, and has never had an office or place of business, a telephone listing or a bank account, in the State of New York. It owned no tangible property, real or personal, in the State of New York, and it kept none of its books of account or corporate records in the State of New York. None of the officers or directors of defendant SAP resided or was employed in the State of New York, and no meeting of its stockholders or board of directors has ever been held in the State of New York.
Except for the ownership of the shares of defendant peugeot, the defendant SAP has no contact whatever with the State of New York and was not doing business in the State of New York on the date of service of the summons.
The papers submitted by plaintiff fail to reveal that standard of “minimal contacts” necessary to sustain jurisdiction over the foreign corporation (McGee v. International Life Ins. Co., 355 U. S. 220; Hanson v. Denckla, 357 U. S. 235). While there is no precise rule to determine whether a foreign corporation is doing business in the State (Tauza v. Susquehanna Coal Co., 220 N. Y. 259), its “ operations [must] establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which [it] has incurred there ” (International Shoe Co. v. Washington, 326 U. S. 310, 320; see, also, Pine & Co. v. McConnell, 273 App. Div. 218).
The main thrust of plaintiff’s argument (that this court has jurisdiction in personam) is that a foreign corporation may be considered to be doing business in this State because its wholly owned subsidiary acts as its exclusive agent in the sale of its products.
*1049 In a sense every wholly owned subsidiary corporation may be said to be an agent of its parent company. But what must be determined here is something of more refinement. It is this — was peugeot the “managing agent ” in this State of SAP (not urged on this motion) or can it be said that its activities were so interwoven with SAP’s that it must be held that the latter was doing business here?
Except for the ownership by SAP of the shares of stock of peugeot, and the usual effect which such ownership may have had upon the selection of directors of peugeot, the subsidiary company has been operating as a completely independent corporate entity separate and apart in all respects from the parent French company, peugeot has its own employees who are employed and discharged by its management. It maintains its own offices in the City of New York. It keeps its own funds in its own bank accounts and pays its expenses and otherwise finances its business with its own funds and credit. All of its transactions are entered in its own books and records. These transactions consist principally of purchases and sales of vehicles and products manufactured by SAP in which peugeot acts for itself, taking and giving title in its own name.
The court holds that the mere ownership of shares of a subsidiary corporation doing business in the State does not make the foreign parent company subject to its jurisdiction. In Cannon Mfg. Co. v. Cudahy Co. (267 U. S. 333), it was stated: “ The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the State in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. Bank of America v. Whitney Central National Bank, 261 U. S. 171. It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one State shall be amendable to suit in the federal court for another State in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, Inc., 261 U. S. 174, 177-8. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U. S. 406, 409-11; Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U. S. 364; and People’s Tobacco Co., Ltd. v. American Tobacco Co., 246 U. S. 79, 87. In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, *1050 in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction” (pp. 336-337; italics supplied). Here, too, the corporate separation, though formal, was real. Therefore, SAP had the right to use peugeot as its subsidiary corporate instrumentality without incurring the risk of subjecting itself amenable to suit in this forum.
The cases of Goodman v. Pan American World Airways (1 Misc 2d 959, affd. 2 A D 2d 707) and Rabinowitz v. Kaiser-Frazer Corp. (198 Misc. 707, affd. 278 App. Div. 584, affd. 302 N. Y. 892), cited and relied upon by plaintiff, are distinguishable. In Goodman the learned Justice in Special Term construed the activities of the subsidiary corporation to be such as to make it managing agent of the foreign corporation because the subsidiary handled certain overseas sales for the parent, and carried no stock or inventory and sent all purchase orders to the parent, which would ship the products directly to the purchaser. Thus the subsidiary was a sales agent for the parent with its compensation for sales represented by discounts on the price of the product. In Bábinowits, the subsidiary was one of three subsidiaries, which together with the parent constituted a single business of manufacturing and selling automobiles, for which consolidated financial statements were prepared and consolidated income tax statements were filed. The subsidiaries were underfinanced and obtained substantial credit from the parent in the form of advances and from banks upon loans guaranteed by the parent. They paid no interest to the parent upon the advances and no dividends. The directors and officers of the subsidiaries were also directors and officers of the parent, and the parent usually paid the entire salary of the various officers, although there were instances where the subsidiary paid the entire salary of officers common to the parent and itself. The motion to vacate the service of the summons is granted.