**TOKYO BOEKI (U. S. A.), INC.,**
Plaintiff,

v.

**SS NAVARINO, her engines, boilers, etc.**
and

Compania Naviera Hidalgo S. A., Pacific Star Line, Zim Israel Navigation Co., Ltd., and American-Israeli Shipping Co., Inc., Defendants.

**COMPANIA NAVIERA HIDALGO S. A.,**
and Zim Israel Navigation Co., Ltd.,
Third-Party Plaintiffs,

v.

**TOKYO BOEKI LTD., and Maher Steve-doring Co., Inc., Third-Party Defendants.**

No. 69 Civ. 5504.

United States District Court,
S. D. New York.

Feb. 16, 1971.

Miller, Montgomery, Spalding & Sogi, New York City, for third-party defendant Tokyo Boeki Ltd.; Merril Mironer, New York City, of counsel.

Dougherty, Ryan, Mahoney, Pellegrino & Giuffra, New York City, for defendant and third-party plaintiff Compania Naviera Hidalgo S. A.; Lawrence J. Mahoney, Peter J. Zambito, New York City, of counsel.

Thacher, Proffitt, Prizer, Crawley & Wood, New York City, for third-party defendant Maher Stevedoring Co., Inc.; Dwight B. Demeritt, Jr., New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for plaintiff Tokyo Boeki (U. S. A.), Inc.; Louis G. Juliano, New York City, of counsel.

Hill, Betts & Nash, New York City, for defendant and third-party plaintiff Zim Israel Navigation Co., Ltd.; Donald B. Allen and Stephen F. Downs, New York City, of counsel.

## OPINION

LASKER, District Judge.

Tokyo Boeki Ltd., a Japanese corporation, here moves under Rule 12(b), F.R. Civ.P., to set aside service of process on it as the third party defendant and to dismiss for lack of jurisdiction. In the alternative, Tokyo Boeki Ltd. seeks to amend its complaint to assert its right of arbitration against one of the third party plaintiffs, and for a stay of the action pending such arbitration under 9 U.S.C. § 3 and Rules 12 and 15, F.R. Civ.P.

## BACKGROUND FACTS

This litigation arises out of a shipment of steel pipe from Wakayama, Japan, to Newark, New Jersey, in March and April of 1968. The pipe was ordered from Tokyo Boeki Ltd. ("Boeki Japan") by a New York corporation, Tokyo Boeki (U. S. A.) Inc. ("Boeki USA"), a wholly owned subsidiary of Boeki Japan. Boeki USA intended to resell the pipe to Cambridge Lee Metal Company of Massachusetts.

Boeki Japan arranged through Zim Israel Navigation Company, Ltd. ("Zim")

for a space charter on the S.S. Navarino which Zim controlled under a time charter from the ship's owner, Compania Naviera Hidalgo S.A. ("Hidalgo"). Gold Star Line (Japan) Ltd., also referred to as Pacific Star Line, was the agent designated by Boeki Japan and Zim for the loading of the pipe at Wakayama. The terms governing the loading and shipment of the pipe were contained in a fixture note of February 6, 1968 between Gold Star Line as Zim's agent and Boeki Japan.

When the steel pipe arrived in Newark, the American-Israeli Shipping Company, also Zim's agent, contacted the Maher Stevedoring Co., Inc. and arranged to unload and store the pipe. Upon inspection after the pipe had been unloaded, Boeki USA found that the shipment had been damaged. In December 1969 Boeki USA brought an action for $13,000 in damages against Compania Naviera Hidalgo S.A., Pacific Star Line, Zim Israel Navigation Company, Ltd., and American-Israeli Shipping Company. Boeki USA also sought to arrest the S.S. Navarino.

In February 1970 Zim filed a third party complaint against Boeki Japan and Maher Stevedoring Co., Inc.; Boeki Japan answered on March 30, 1970, asserting the affirmative defense of lack of jurisdiction in personam because it was not present in New York. Zim served the third party complaint and summons upon Masayoshi Ishizaka, who was an employee of Boeki USA. In May 1970, Hidalgo served its third party complaint on another Boeki USA employee, Shintaro Inamura; Boeki Japan asserted the same defense. At no time was service attempted on Boeki Japan except through Boeki USA.

## CONTENTIONS OF THE PARTIES

The moving party, Boeki Japan, argues that it is a distinct and separate corporate entity from Boeki USA, and that service of the complaint against Boeki Japan on Boeki USA by both third party plaintiffs is not service on Boeki Japan. It notes that Boeki USA's status as a subsidiary of Boeki Japan is not alone sufficient to make the subsidiary an agent authorized to accept service for the principal. Boeki USA is a separately incorporated entity under the laws of New York, keeping its own and separate books, records, tax returns, and operations. On such a showing, Boeki Japan seeks dismissal of the third party action.

In the alternative, Boeki Japan urges that it be allowed to amend its answer to the third party complaint of Zim and assert the affirmative defense that Boeki Japan and Zim must first resort to arbitration pursuant to the terms of the fixture note agreement between Boeki Japan and Gold Star Line (Japan) Ltd. as agent for Zim, of February 6, 1968. Paragraph 15 of the note provides arbitration for "any and all differences and disputes of whatsoever nature arising out of this charter," and the bill of lading for the pipe incorporated the terms of the note in full, reciting that "if there is any conflict between bill of lading and fixture note provisions of fixture note to govern." On these facts Boeki Japan contends that this court should let Boeki USA proceed against Zim and the other defendants on its action, and order that if judgment is recovered against Zim the claim of Zim over against Boeki Japan be submitted to arbitration.

The third party plaintiffs and third party defendant Maher Stevedoring Co., opposing parties on this motion, argue that Boeki USA is more than the mere subsidiary of Boeki Japan, and is in fact its agent in New York. They urge that Boeki Japan does business in New York. In support of their contentions that Boeki USA is the agent for Boeki Japan they point to the exchanges of personnel between the two companies, to the sales by Boeki USA of Boeki Japan products indicating a conduit-type relationship, to the listing of Boeki USA as one of Boeki Japan's "Overseas Offices" on Boeki Japan's letterhead, and to Boeki Japan's request that Boeki USA generate fur-

ther orders from Cambridge Lee Metal Company.

Third party plaintiff Zim further argues, in opposition to Boeki Japan's motion for a stay of its third party complaint pending arbitration, that the interests of justice require that the case go forward with all parties and issues before the court. Zim notes that the bill of lading (which contains no arbitration clause) is sued on, not the fixture note, and asserts that Boeki Japan has waived its right to arbitration by an unreasonable delay in asserting it. Hidalgo, as the other third party plaintiff, opposes any stay of its claim against Boeki Japan because it was not a party to the agreement providing for arbitration. Maher Stevedoring Co. urges that, even if the stay is granted between Zim and Tokyo Boeki, it should not restrict Maher from proceeding with a cross claim against Boeki Japan arising out of Hidalgo's third party complaint against Maher as third party defendant.

## JURISDICTION OVER BOEKI JAPAN

### A. FACTS

█ Having in mind the importance of establishing with clarity the facts which determine whether a party is doing business in New York under New York CPLR § 301 and has an agent here to accept service, Maryland Tuna Corp. v. MS Benares and Nichimen Co. Ltd., Tokyo, 429 F.2d 307 (2d Cir. 1970); Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 323 (2d Cir. 1964); Grandoe Glove Corporation v. Great Eastern Financial Corp., 34 A.D.2d 593, 308 N.Y. S.2d 467 (1970), this court sought additional affidavits of the parties beyond those submitted with the motion papers and beyond the deposition of Takahiro Harada, a manager of Boeki USA. Boeki Japan responded to the court's request by providing the affidavit of Shintaro Inamura, Vice President of Boeki USA. The affidavits and deposition establish the following facts as to the relationship between Boeki USA and Boeki Japan.

Boeki USA was incorporated in New York in 1964. Boeki Japan has been trading directly with New York customers since its creation in 1947. Boeki Japan owns all the 200 shares of outstanding Boeki USA stock; no dividends have ever been paid on this stock. The membership of the boards of directors of the two corporations overlap; Messrs. Y. Matsumiya and S. Tanaka serve on both Boards, Boeki Japan having five other Board members and Boeki USA two others.

On the letterhead of Boeki Japan there is a listing of "Overseas Offices" and leading the list of seven locations is "New York," a reference admittedly to Boeki USA. Zim also refers to a business director which lists among the "branches" of Boeki Japan the item "New York (Tokyo Boeki (USA) Inc.)."

"The administrative staff and other supervisory personnel of Boeki USA have primarily been former employees of Boeki [Japan] Ltd." (Affidavit of Shintaro Inamura sworn to December 31, 1970). The deposition of Takahiro Harada indicates that he worked for Boeki Japan in Venezuela before coming to New York and working for Boeki USA. Harada also indicated that the manager before him was one K. Ishizawa, who has since left Boeki USA and is in the employ of Boeki Japan in Tokyo. The Boeki USA administrative and supervisory personnel "usually work in the United States for a period of two or three years and then resume employment" with Boeki Japan in Tokyo or at one of its other offices. (Affidavit of Shintaro Inamura).

In its operations, Boeki USA keeps all its own corporate and business records, "but does send copies of certain financial and sales reports, major contracts, corporate minutes and litigation papers to Boeki [Japan] Ltd." (Affidavit of Shintaro Inamura). However, at the deposition of Takahiro Harada a number of the documents produced were copies supplied to Boeki USA by Boeki Japan for the deposition. Boeki USA and Boeki Japan file separate tax returns and

keep separate records of business transactions "as if between wholly unrelated and independent business entities." (Id.).

Of Boeki Japan's world-wide sales for 1970, which amounted to $183 million, 4 percent, or some $7.42 million,[1] were made through Boeki USA, all for resale. This figure accounts for 20 percent of Boeki Japan's total sales to United States customers, the remaining 80 percent being made directly between Boeki Japan and the customer. Some 5 percent of Boeki Japan's United States sales and purchases directly to or from New York based customers or suppliers are some 5 percent of Boeki Japan's total United States sales and "almost none of these transactions involve Boeki USA." (Id.) Of the different commodities traded by Boeki Japan, the majority of the sales of steel products to United States customers are made to Boeki USA, which then resells the steel products to United States customers. The sales to Cambridge Lee Metal Company, Inc. began in 1965 by Boeki USA, and approximately 25 percent of Boeki USA's sales are made to Cambridge Lee.

During the deposition of Takahiro Harada, Zim adduced a letter from Boeki Japan to Boeki USA in Japanese. The translation thereof, which was not controverted as to its accuracy, reads as follows:

"Referring to the increased amount on NY186–II we corrected the figures as follows and received the confirmation for the February shipment from New York for which we thank you: [deleting here the figures]. As for April (or May) shipment, we have received no reply from New York, but since we are not doing good business at present whether it is hot or cold or G.I., *please do try to get it by negotiating with Cambridge.*" (Emphasis added.)

Boeki USA's financing is self-sustaining and is derived from the proceeds of its sales. Boeki Japan has acted as guarantor of bank loans to Boeki USA at the request of the lending banks. Boeki USA makes purchases from Boeki Japan on the basis of letters of credit opened by Boeki USA in favor of Boeki Japan in advance of the delivery of commodities ordered. Except on rare occasions, no credit is extended by Boeki Japan to Boeki USA.

Although further information might have been adduced to clarify both the relationship between Boeki USA and Boeki Japan and the status of Boeki Japan within New York, the facts here are sufficient to permit determination as to the question of jurisdiction under New York law.

## B. DISCUSSION

Jurisdiction in New York may be founded on either New York CPLR § 301 or § 302. Turning first to § 301 (the "doing business" section), this section, as was stated in Gelfand v. Tanner Motor Tours, Inc., supra, 339 F.2d at 320,

"preserves traditional New York law, under which 'a foreign corporation, not authorized to do business in [the] State, was held amenable to local suit only if it was engaged in such a continuous and systematic course of "doing business" [there] as to warrant a finding of its "presence" in [the] jurisdiction.' Simonson v. International Bank, supra, 14 N.Y.2d [281] at 285, 251 N.Y.S.2d [433] at 436, 200 N.E.2d [427] at 429. Once a foreign corporation is found to be 'present' within the state, however, 'jurisdiction does not fail because the cause of action has no relation in its origin to the business [there] transacted.' Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 268, 115 N.E. 915, 918 (1917). * * * The constitutionality of these doctrines has been approved by the Supreme Court. International Shoe Co. v. State of Washington, 326 U.S. 310, 318, 66 S.Ct.

---

1. Shintaro Inamura's affidavit indicates that Boeki USA's sales aggregate $10 million per year; all but 7 percent of its purchases are from Boeki Japan.

154, 90 L.Ed. 95 (1945); Perkins v. Benguet Consol. Mining Co., 342 F.2d 437, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952)."

■ New York courts have held that a parent corporation can be present in the state because of the activities of its subsidiary. However, the activities must amount to more than the mere parent-subsidiary relationship, Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Simonson v. International Bank, 16 A. D.2d 55, 225 N.Y.S.2d 392, aff'd 14 N. Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1962). The parent may be subject to jurisdiction where the subsidiary "performs all the business" which the parent could do "were it here by its own officials." Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 854 (1967); Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (2d Cir. 1967). Additionally, where the subsidiary is "in fact, if not in name" a branch of the parent, the distinctions between the two fall and the parent is amenable to New York's jurisdiction. Public Administrator of County of New York v. Royal Bank of Canada, 19 N.Y.2d 127, 132, 278 N.Y.S.2d 378, 382, 224 N.E.2d 877 (1967); Taca International Airlines S.A. v. Rolls-Royce of England, Ltd., 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965).

A finding under New York law that a parent is present within the forum because of the activities of its subsidiary must, of course, satisfy the requirements of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and the cases subsequent to it. Discussing this question, the Court of Appeals for this Circuit has stated in Blount v. Peerless Chemicals (P.R.), Inc., 316 F.2d 695, 697 (1963):

"*  *  * the two fundamental factors determinative of the propriety of personal jurisdiction [over a foreign corporation] appear to be [1] the nature and extent of the business activi-

ties conducted by and on behalf of the foreign corporation in the forum state, and [2] the relationship to that state and those activities of the cause of action upon which the suit is founded."

■ The evidence of record is sufficient to establish that Boeki Japan was present in New York within the meaning of § 301, CPLR, and that its contacts with the state—through the activities of its subsidiary—are such as to render it subject to the jurisdiction of this court. The regular interchange of managerial and supervisory personnel, the complete ownership of the subsidiary with the parent deriving the benefit of all the subsidiary's profits, the listing of the subsidiary as an overseas office or branch of the parent, the exchange of a variety of records and documents, the delegation to Boeki USA of a majority of Boeki Japan's steel products trade with American customers, the request by Boeki Japan that Boeki USA solicit business from Cambridge Lee Metal Company (which since 1965 had accounted for one-fourth of Boeki USA's sales), the overlap of directors on the boards of the parent and the subsidiary, and the very frequent communications between New York and Tokyo: all these facts illustrate that Boeki USA was both, in practical effect, the same entity as Boeki Japan for some purposes and its agent for other purposes.

■ That Boeki USA kept separate corporate records and filed separate tax returns from its parent, and also for bookkeeping purposes treated the purchases from its parent as arm's length transactions, does not alter the result, Goodman v. Pan American World Airways, 1 Misc.2d 959, 148 N.Y.S.2d 353 (Sup.Ct.1956); Green v. Swissair Transport Co., 33 F.R.D. 13 (S.D.N.Y. 1963); State of Maryland v. Capital Airlines, 199 F.Supp. 335 (S.D.N.Y. 1961).

■ Whenever, as here, the activities of a foreign corporation render it present in New York State, "the agent in charge of those activities is the 'managing agent' pro hac vice" for the serv-

ice of the complaint and summons. Bomze v. Nardis Sportswear, 165 F.2d 33, 37 (2d Cir. 1948).

Accordingly, both Zim and Hidalgo have properly served Boeki Japan and it is subject to the jurisdiction of this court.

■ Having found that jurisdiction exists under § 301, it is unnecessary to discuss the possible application of CPLR § 302(a) 3,[2] the only ground under which jurisdiction could conceivably be founded under § 302. The cause of action did not arise out of either the transaction of business within New York (§ 302(a) 1) or a tort committed within the state (§ 302(a) 2), and Boeki Japan does not appear to own property within the state (§ 302(a) 4). Moreover, "[t]he mere occurrence of the injury in this State [if it did occur here] certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording." [Citing cases]. Longines-Wittnauer Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 21, 209 N.E.2d 68, 77 (1965).

## MOTIONS RELATING TO ARBITRATION

We turn now to Boeki Japan's motion for leave to amend its answer to assert an affirmative defense of arbitration, and for a stay of prosecution of Zim's claim against it pending arbitration of the claim.

### A. THE MOTION TO AMEND

■ The fixture note of February 6, 1968 between Gold Star Line as Zim's agent and Boeki Japan provides that "[a]ny and all differences and disputes of whatsoever nature arising out of this charter shall be put in arbitration * * *" This provision and all the terms of the fixture note are fully incorporated in the bill of lading by the specific terms of the bill.

Boeki Japan now moves for leave to amend its answer to allege the affirmative defense of arbitrability. Zim objects on the grounds that the motion is dilatory only and that Boeki Japan has waived its right to arbitration by delay in asserting it. Zim points to the two years which have elapsed since the damage to the pipe occurred, and urges that such a delay is fatal to Boeki Japan's application. However, Boeki Japan's counsel represent that the existence of the fixture note was unknown to them until the deposition of Takahiro Harada on May 20, 1970, after Boeki Japan's answer had been served. This undisputed assertion appears to justify the failure to have pleaded the affirmative defense at an earlier time. Moreover, as pointed out by Judge Learned Hand in Shanferoke Coal & Supply Corp. v. Westchester S. Corp., 70 F.2d 297, 299 (2d Cir. 1934):

"If the plaintiff [here Zim on the third party claim] meant to proceed further and enforce his claim for damages, the initiative rested upon it; it should have named the first arbitrator. If it did not but sued instead, it was itself the party who fell 'in default in proceeding with such arbitration,' not the defendant."

Finally, courts should be chary of concluding that a party has waived his right to arbitration in view of the "overriding federal policy favoring arbitration." Carcich v. Rederi A/B Nor-

---

2. Subdivision 3 of § 302(a), CPLR, confers jurisdiction over a nondomiciliary who, in person or through an agent,

"commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; * * *"

die, 389 F.2d 692, 696 (2d Cir. 1968). More important, however, than the justification of delay is the question whether Zim would be prejudiced by an amendment of Boeki Japan's answer. It is difficult to find any prejudice which would flow from the amendment. Had Boeki Japan asserted the affirmative defense at an earlier date the posture of the parties would be no different than if an amendment is allowed. The issues, witnesses and documentary proof will all be the same in arbitration as they would be in a court trial. Zim does not, and indeed probably cannot, specify any particular in which its rights to a just determination of the matter will be prejudiced by virtue of permitting an amendment of the answer.

Accordingly, in the light of these considerations and of the provisions of Rule 15, F.R.Civ.P., that "leave [to amend] shall be freely given when justice so requires," the motion to amend is granted.

## B. MOTION FOR A STAY

■ As indicated above, the provision for arbitration of all disputes contained in the fixture note between Zim's agent and Boeki Japan is incorporated, as a part of the fixture note, in the bill of lading covering this transaction. Under the circumstances, the provisions for arbitration "are a part of the contract of carriage and are binding upon those making claim for damages for the breach of that contract just as they would be if the dispute were between the charterer and the shipowner." Son Shipping Co., Inc. v. DeFosse & Tanghe, 199 F.2d 687, 688–689 (2d Cir. 1952).

The Arbitration Act, 9 U.S.C. § 3, reads as follows:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

This court has interpreted § 3 to provide that

"When a defendant asks for a stay under § 3, he is not seeking specific performance (i. e., an order requiring that the parties proceed to arbitration), but merely a stay of a kind long familiar in common law and in equity actions. Section 3 broadly commands that if 'satisfied that the issue involved in such suit * * * is referable to arbitration,' the court must 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement * * *.' 'There is * * * strong reason for construing the clause as permitting the federal court to order a stay even when it cannot compel the arbitration.' The power to grant such a stay under § 3 is in no way conditioned upon the existence of power to compel arbitration in accordance with § 4 of the Act." [Citing cases]. Tepper Realty Co. v. Mosaic Tile Co., 259 F.Supp. 688, 692 (S.D. N.Y.1969) (MacMahon, J.)

In the light of the clear language of the statute and its interpretation by this court, Boeki Japan's application for a stay of the trial of Zim's third party complaint pending arbitration is granted. Such a stay will, of course, apply only to Zim's third party complaint against Boeki Japan and will not affect the litigation of any other cause of action now before the court.

The motion of Boeki Japan to set aside service of process and to dismiss for lack of jurisdiction is denied.

The motions to amend Boeki Japan's answer and for a stay of trial of Zim's third party complaint against it are granted.