182 N.J. Super. 126 (1981)
440 A.2d 76
EDWIN CINTRON, PLAINTIFF,
v.
W & D MACHINERY COMPANY, INC., A DELAWARE CORPORATION AND WINKLER & DUNNEBIER, A WEST GERMAN CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided October 29, 1981.
*127 Alexander W. Booth, Jr., for plaintiff (Brownstein, Gold & Booth, attorneys).
Robert F. Colquhoun, for defendant W & D Machinery Company, Inc.
Bernard Chazen, for defendant Winkler & Dunnebier.
YOUNG, J.S.C.
Whether or not service of process must be made upon a West German corporation according to the "Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters," 20 U.S.T. 361-367 (1969), is the issue presented by a motion to quash service made under the long-arm rule, R. 4:4-4(c)(1), upon its wholly-owned subsidiary incorporated under the laws of Delaware.
This is a product liability action in which plaintiff Edwin Cintron, alleges injuries arising from the negligent design, manufacture, testing and inspection of an envelope machine. It is alleged that the machine had been purchased by his employer from defendant W & D Machinery Company, Inc., a Delaware corporation, with its principal office in Overland, Kansas, the distributor of the machine allegedly manufactured by its parent Winkler & Dunnebier, a West German corporation. Service was made upon both defendants at Overland, Kansas, by registered mail, return receipt, pursuant to an order entered October 7, *128 1980 on the ex parte application of plaintiff. W & D Machinery Company, Inc., filed an answer on its own behalf.
Counsel for the West German corporation, appearing specially, conceded that it is the parent company but argued that the subsidiary is not the agent for service of process. Moreover, counsel argues that provisions of the long-arm rule, R. 4:4-4(c)(1), have not been complied with in that service by mail is not, in the language of the cited rule, "consistent with due process of law," which, counsel contends, requires service according to the terms of the treaty referred to as the Hague Convention.[1] Article 1 of the treaty, promulgated February 10, 1969, and in effect between the United States and the Federal Republic of Germany on July 26, 1979, reads, in part:

*129 The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.
Counsel for plaintiff submits that the present case is not one which presents an "occasion to transmit" process "for service abroad" for the reason that the presence in the United States of a wholly-owned subsidiary distributor of the product in question provides an independent basis for service. In short, plaintiff contends that there is no need to resort to the treaty and that the prerequisites for invoking the provisions of the long-arm rule have been satisfied.
The implications of the parent-subsidiary relationship as it affects compliance with due process in the service of process have been addressed by several courts. It should be noted at the outset that in none of the reported New Jersey cases was the Hague Convention invoked. The decisions invariably turned upon a resolution of the question of "doing business" and the "minimum contacts" criteria. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), for most recent application of the minimum contacts standard followed in NJM, Inc. v. Nationwide Fund Raisers, Inc., 180 N.J. Super. 100 (Law Div. 1981).
In Coons v. Honda Motor Co., Ltd. of Japan, 176 N.J. Super. 575 (App.Div. 1980), the Japanese defendant, served through a law firm "acting as its agent" in Washington, D.C., lost its motion to dismiss which it based upon lack of minimum contacts with this forum. That suit was also brought not only against the Japanese corporation but also against its wholly-owned subsidiary which was authorized to do business in New Jersey. Of significance is the comment that the presence of "minor functionaries" such as the several New Jersey Honda dealers did not constitute them as agents for the service of process. 176 N.J. Super. at 583. See "Survey of Recent Developments in New Jersey Law," 11 Seton Hall L.Rev. 639, 641 (1981).
*130 In Van Eeuwen v. Heidelberg Eastern, Inc., 124 N.J. Super. 251 (App.Div. 1973), aff'g Certisimo v. Heidelberg Co., 122 N.J. Super. 1 (Law Div. 1972), a German corporation moved to quash service of process in a product liability action arising from the use of a printing press it manufactured and distributed through defendant third-party plaintiff Heidelberg Eastern, Inc. The German corporation disclaimed that the distributor, incorporated in Delaware, was its agent, pointing out that it did not own any financial interest in the distributor. Judge Byrne, in the Law Division, analyzed the relationship of manufacturer-distributor as detailed in Hoagland v. Springer, 75 N.J. Super. 560 (App.Div. 1962), aff'd 39 N.J. 32 (1962), in Olmstead v. Brader Heaters, Inc., 5 Wash. App. 258, 487 P.2d 234 (App.Ct. 1971), aff'd 80 Wash.2d 720, 497 P.2d 1310 (Sup.Ct. 1972), in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (Sup.Ct. 1961), and in the case then pending, and concluded that such distributors should be considered "as if" they were agents of the respective manufacturers.
The economic reality of the situation is that these distributors, in Hoagland, Omstead, as well as in the case at hand, provide the same service of distribution to the third-party defendant as if they were the manufacturers' agents. Perhaps for other legal purposes (e.g., to avoid future difficulties with federal and state tax laws and other legislation) Hoagland, supra, 75 N.J. Super. at 569, these distributors cannot be classified as agents. [122 N.J. Super. at 12]
The Appellate Division affirmed the denial of the motion to quash service of process, and noted that the absence of ownership of stock in, or control over, the domestic distributor by the German corporation was "of little moment" in light of the fact that the distributor was an "integral spoke in a wheel" of which the German corporation was the hub, quoting the imagery employed in Hoagland, supra, 124 N.J. Super. at 257-258.
In an earlier opinion, Taca International Airlines, Inc. v. Rolls-Royce, Ltd., 84 N.J. Super. 140 (Law Div. 1964), the court found a Delaware corporation, Rolls-Royce, Inc., to be part of "one cohesive economic unit" with English and Canadian corporations *131 and sanctioned service upon those corporations under the long-arm rule.
The guiding principle to be derived from the rationale of the opinions here noted is that the record must be fully developed before a finding of principal-agent between corporate entities may be reached. As our Supreme Court concluded in Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 34 (1950), when the record establishes that a subsidiary is "the instrumentality" of a parent corporation, then the corporate entity will be disregarded for certain purposes.
This is to say that the mere existence of a parent-subsidiary relationship does not validate service upon a subsidiary in order to reach the parent under a long-arm statute or rule. Hermetic Seal Corp. v. Savoy Electronics, Inc., 290 F. Supp. 240 (S.D.Fla. 1967), aff'd 401 F.2d 775 (5 Cir.1968). The federal court, after noting that the principle here expressed was well established, amplified the subject in the excerpt here quoted:
Thus a foreign corporation is not "doing business," or "engaged in a business venture" within a state simply by virtue of owning the stock of a corporation which does no business in that state.
... Adding the fact that there is an identity of officers and directors of the parent and subsidiary corporations does not supply the vital "minimum contact." [290 F. Supp. at 243]
The principle was recognized by Judge Bennett ruling in Magyar v. American Tel. & Tel. Co., 88 N.J. Super. 18 (Law.Div. 1965), on a motion by Bell Telephone Company of Pennsylvania which challenged service that had been made by mail under R. 4:4-4(d) as well as upon the registered agent of A.T. & T. The fact that A.T. & T. owned 100% of the stock of the Pennsylvania corporation did not confer agency status, as the court noted in the following excerpt:
It has been held that where one corporation owns 100% of another corporations's stock, this is not a conclusive presumption of subservience. The court must pierce a multiplicity of formalities and relationships to determine whether the particular corporate form is a shield behind which injustice is sought to be done by those who control the corporation. [88 N.J. Super. at 24, citing New Jersey cases]
*132 The imperative of an adequate record, as well as the fact-sensitive aspect of the judicial inquiry, are exemplified in Alfred Hofmann & Co. v. Karl Mayer Erste H., etc., 159 F. Supp. 77 (D.N.J. 1958). A West German corporation had been served through its managing director who at the time was attending a convention in Atlantic City. The officer was also president of a New Jersey corporation which purchased its product from defendant German company and then sold directly to American customers. Judge Hartshorne concluded his opinion in the words here quoted:
Obviously, therefore, there is prima facie evidence that the service on the German corporation in this case is valid, so that defendant's motion must be denied. On the other hand, of course, when dealing with the complicated factual question of whether a corporation is merely the agent of another, or a completely independent entity, the facts must be fully developed to insure justice. [at 79]
An opinion which precisely illustrates the judicial task, including findings framed by the record, is reported as Goodman v. Pan-American World Airways, 1 Misc.2d 959, 148 N.Y.S.2d 353 (Sup.Ct. 1956), aff'd 2 App.Div.2d 707, 153 N.Y.S.2d 600 (App. Div. 1956). United Aircraft Corporation, appearing specially, moved to set aside service of process upon its wholly-owned subsidiary, United Aircraft Export Corporation. The narrow issue before the court was whether or not the subsidiary was a managing agent of the parent corporation at the time of service. Following a detailed recital of the relationship between the two corporate entities, the trial court expressed its conclusions in the paragraph which follows:
As a matter of policy, a foreign corporation doing business here through a subsidiary should be readily amenable to the process of our courts and, as a general proposition, if the subsidiary is the mere instrumentality of the foreign corporation, it should be held to occupy the status of a managing agent of the foreign corporation within the meaning of statutory provisions authorizing service of process upon a managing agent of a corporation. Here, Export is the instrumentality of United and is in constant touch with the latter not only with respect to sales in the territory assigned to it, but also in connection with the protection of good will and business of United generally with foreign countries. The relationship between the two is such as to irresistibly lead to the inference that notice to Export of a suit against United would be promptly transmitted to United. Therefore, I hold that Export was the managing agent of United *133 within the meaning of the provisions of said Subd. 3 of Section 229 of the Civil Practice Act. Citing numerous cases. [148 N.Y.S.2d at 358]
In three reported cases the Hague Convention was invoked, but the precise issue before this court was not determined. In Isothermics v. U.S. Energy Research & Dev. Agcy., 434 F. Supp. 1155 (D.N.J. 1977), a Japanese defendant, Furukawa Electric Co., Ltd., sought compliance with the Hague Convention after being served by mail pursuant to F.R.Civ.P. 4(i)(1)(D). Judge Biunno did not find it necessary to decide the issue, concluding that defendants, "even if not effectively served with process, are at least on notice of ISO's [plaintiff's] claim." 434 F. Supp. at 1158. Another federal district court concluded that service in Paris upon a Lebanese corporation by a court-appointed process server fell within the provisions of Article 10(b) and of Article V of the Convention. Tamari v. Bache & Co. (Lebanon) S.A.L., 431 F. Supp. 1226 (N.D.Ill.E.D. 1977), aff'd 565 F.2d 1194 (7th Cir.1977) cert. den. 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978). In Martin Motor Sales, Inc. v. Saab-Scania of Amer., Inc., 397 F. Supp. 389 (S.D.N.Y. 1974), defendant Saab-Scania A B was served in Sweden in accordance with the Convention. The motion to dismiss brought by the Swedish corporation on grounds that it was not "doing business" within New York State was denied. The relations of the Swedish corporation with its American subsidiary, Saab USA, "make Saab USA, Inc. an agent of defendant Saab AB," even though Saab USA, Inc. was not formally denominated as the "agent" of the parent company. The federal court quoting from Autowest, Inc. v. Peugeot, Inc. and Associete de Automobiles Peugeot, 1968 C.C.H. Trade Cases, par. 72, 389 at 85, 164 (E.D.N.Y. 1968), in reference to the American corporation noted that "its function fills a gap that could otherwise be filled only by the manufacturer's own functionaries."
By the same reasoning, a foreign manufacturer of automobiles should not be permitted to take advantage of business opportunities here and at the same time avoid jurisdiction by creating separate local corporations knowledge of whose activities the parent completely disavows at its convenience. [at 392]
*134 The record before this court will be summarized and evaluated in light of the decisional law here collated. The certification of Alexander W. Booth, counsel for plaintiff, recites that he was told by Richard Collins, counsel to W & D Machinery Company, Inc., that Winkler & Dunnebier was the parent company. In answers to interrogatories the domestic corporation acknowledged that the West German corporation owns 100% of its stock. In a prior certification Booth stated that "Mr. Collins also advised me that he was not authorized to accept service of process for the parent company and that he would not voluntarily accept service for Defendant, W & D." A certification of Robert F. Colquhoun, repeats the assertion of Collins that he was not the registered agent for Winkler & Dunnebier. In his affidavit Collins states that he has no recollection of ever having spoken with Booth.
To complete this review of the record, it should be noted that in its pleading W & D Machinery Company denies the allegation that it was the distributor or seller of a Winkler and Dunnebier 527 GS Rotary Envelope Machine purchased by Berlin and Jones Company for use at its industrial plant in East Rutherford, New Jersey.
This court concludes that plaintiff has failed to establish that "either an officer, director, transferee or managing or general agent" of Winkler and Dunnebier or any person has been "authorized by appointment or by law to receive service of process" on its behalf. Nor has plaintiff established that the West German corporation has a principal place of business in this State or a servant within this State. R. 4:4-4(c)(1).
The rule cited concludes with the provision here quoted:
If it appears by affidavit of plaintiff's attorney or of any person having knowledge of the facts that after diligent inquiry and effort personal service cannot be made upon any of the foregoing and if the corporation is a foreign corporation, then, consistent with due process of law, service may be made by mailing, by registered or certified mail, return receipt requested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office.
*135 The Hague Convention contains a provision which specifically allows certain prior methods of service to remain in force. For example, Article 8 sanctions the use of consular channels to effect service upon the nationals of signatory states, provided the state of destination does not object. Article 9 provides that the Convention does not affect the present system of letters rogatory. Most significant are the provisions of Article 10(a):
Provided the State of destination does not object, the present Convention shall not interfere with 
(a) the freedom to send judicial documents, by postal channels, directly to persons abroad.
........
It would appear that service by Americans upon European defendants may remain in force absent objection by the state of destination. The Federal Republic of Germany has filed objection with the Secretary of State of the United States to the service of judicial documents directly by mail. (Ex. Movant's Brief, Formal Protest Embassy of the Federal Republic of Germany, Washington, D.C., September 27, 1979.) The Administrative Office of United States Courts, by memorandum to United States District Court Clerks dated November 6, 198 advised that the Federal Republic of Germany, having indicated in its instrument of ratification that objection is made to service by international mail, such service should not be attempted. (Ex. Movant's Brief.)
The Hague Convention, by the supremacy clause, supersedes all state and federal methods of service of process abroad in those cases in which its provisions are applicable. This court concludes that the provisions of the Hague Convention are applicable on the record presented in the pending action.
On the authorities cited and the reasoning set forth the motion on behalf of Winkler & Dunnebier to quash the service by registered mail is granted, and the order previously entered shall be modified to require that service of process be effected in accordance with the provisions of the Hague Convention.
NOTES
[1] The objectives of the Convention, a product of the Hague Conference on Private International Law, have been summarized as follows: "(a) it creates a new and specific governmental method for service of documents from abroad by each signatory state; (b) it regulates previous methods of service; and (c) it regulates the method for obtaining default judgments when documents are served abroad." Downs, "The Effect of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters," 2 Cornell International L.J., 125, 130 (1969.)

The text of the Convention is reproduced in VII Martindale-Hubbell Law Directory at 4499 (1980 ed.).
To effectuate service under the Convention, three copies of special forms obtained from the office of the Clerk of the Superior Court must be filled out. (One copy to be returned to the applicant). The "Request" portion of the form calls for the "identity and address of the applicant;" the name and address of the official who ordinarily serves process in the court in which the action is pending, e.g., the Clerk of the Superior Court of New Jersey; the name of the "central authority" abroad which has been designated by the particular country to receive foreign service requests. Names and addresses of the "central authority" of the signatories to the Convention may be consulted in F.R.Civ.P., 28 U.S.C.A., annotation to F.R.Civ.P., R. 4:(i). The completed forms, in triplicate, together with copies of the documents to be served abroad, should be sent to the Office of the Clerk of the Superior Court, which office takes care of mailing. There is no charge to the applicant except when problems arise. The "central authority" abroad is charged with making return of a "certificate" to the office of origin. See Schkeeper, "Obtaining Service Abroad of Judicial Documents," 105 N.J.L.J. 83 (1980).